IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MARCH 1998 SESSION

FILED

August 13, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| DERRICK E. MEANS, | ) | |
| | ) | No. 02C01-9707-CR-00248 |
| Appellant, | ) | |
| | ) | Shelby County |
| v. | ) | |
| | ) | Honorable John P. Colton, Jr., Judge |
| STATE OF TENNESSEE, | ) | |
| | ) | (Post-Conviction Relief) |
| Appellee. | ) | |

FOR THE APPELLANT:

Randall B. Tolley
242 Poplar Avenue
Memphis, TN 38103

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
425 Fifth Avenue, North
Nashville, TN 37243-0493

Peter M. Coughlan
Assistant Attorney General
425 Fifth Avenue, North
Nashville, TN 37243-0493

William L. Gibbons
District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN 38103

C. Alanda Horne
Assistant District Attorney General
201 Poplar Avenue, Suite 301
Memphis, TN 38103

OPINION FILED: _____

REVERSED AND REMANDED

PER CURIAM

## <u>OPINION</u>

The petitioner, Derrick E. Means, appeals the trial court's denial of post-conviction relief. The issue presented for our review is whether the petitioner's guilty pleas were knowingly and voluntarily made.

We reverse the judgment and remand to the trial court. In our view, the petitioner's counsel was ineffective and the pleas were not knowingly and understandingly made.

### Procedural Background

On July 5, 1995, the petitioner pled guilty in state court to attempted second degree murder and aggravated robbery, Class B felonies; attempted robbery, a Class D felony; and theft under $500, a Class A misdemeanor.[1] The petitioner received three twelve-year sentences (two of them Range II and one Range III) for the felonies and a sentence of eleven months and twenty-nine days for the misdemeanor theft conviction.

The guilty pleas were the result of a negotiated plea agreement which provided that all of the petitioner's sentences would be served concurrently. The agreement also provided that the petitioner was to serve these state sentences concurrently with a prior federal sentence of forty-six months. This agreement is memorialized in the "negotiated plea agreement" and also on the judgment sheets.

---

[1] The petitioner entered an <u>Alford</u> plea on a best interest basis to attempted second degree murder and aggravated robbery after taking a Jeep Cherokee from a Shelby County car dealership in 1993. After asking the salesman to turn on the engine, the petitioner pulled the salesman from the vehicle and drove off the car lot. The salesman jumped to get out of the way of the vehicle and landed on the vehicle's hood; the salesman fell off and suffered minor injuries when the petitioner drove into the street.

The petitioner also pled guilty to attempted robbery and misdemeanor theft for attempting to take a window air-conditioning unit from a Sears store.

The transcript of the submission hearing confirms that the petitioner, his counsel, the assistant district attorney, and the trial judge, agreed that the state sentences should be served concurrently with the federal sentence. The trial judge ordered that the petitioner be transferred to the Federal Bureau of Prisons to begin serving his state sentence. Later, federal officials refused to accept the petitioner.

At the time of his sentencing in federal district court, the petitioner was in state custody but had not been convicted of the state offenses. The federal judgment ordered that his federal sentence be served concurrently with another federal sentence but did not address the pending state cases. After his sentencing in federal court, the petitioner was returned to state custody.

The petitioner did not appeal. He has been serving time in state prison since July 1995.[2] He has yet to serve any federal time.

## Petition for Post-Conviction Relief

Within a year of the state court judgment, the petitioner filed a petition for post-conviction relief alleging that his plea was defective.[3] Post-conviction counsel was appointed and an amended petition was filed July 15, 1996, alleging that petitioner's trial counsel was ineffective.

An evidentiary hearing was held February 27, 1997. The testimony demonstrated that Attorney Paula Skahan represented the petitioner on the federal

---

[2]When the petitioner pled guilty on July 5, 1995, he was given credit for 730 days (two years) during which he was incarcerated in the county jail.

[3]The petition for post-conviction relief was filed in March or April of 1996. The time stamp on the petition is not visible; however, the response filed by the state and the order appointing counsel to represent the petitioner were filed April 30, 1996.

3

charges[4] and the state charges stemming from the robbery at the car dealership. Attorney William Moore represented the petitioner on the remaining state charges. The record establishes that Ms. Skahan told the petitioner that all of the sentences, state and federal, would be served concurrently. She acknowledged that the federal authorities did, indeed, refuse to take the petitioner into custody. The petitioner testified that he would not have entered the guilty pleas had he known his state and federal sentences would not be served concurrently.

No one asked Ms. Skahan at the post-conviction hearing if she ever discussed with federal officials -- before the pleas were entered in state court – the plan to have the state sentences concurrent with the federal sentence already imposed. Our inference from the proof available is that she did not. It was not until after the sentencing hearing that Ms. Skahan learned the federal authorities would not honor the agreement. She contacted the Federal Bureau of Prisons and was told state courts had no authority to order the petitioner into federal custody.

The trial court denied the petition for post-conviction relief, finding that the petitioner's pleas were freely and voluntarily given and the attorney's representation was effective. The petitioner was referred to the federal system for any possible remedy.

**Federal Court**

The petitioner tried to obtain relief in federal court. In 1996, while in state prison, the petitioner filed a motion in federal district court asking to be taken into federal custody. The district court denied the request. On appeal, the United

---

[4]Ms. Skahan testified that she was appointed to represent the petitioner in federal court after he fired his attorney following a conviction. She was appointed to handle the motion for new trial, sentencing, and appeal. The petitioner's family then hired Ms. Skahan to handle the guilty pleas on one set of his state charges stemming from the theft of the Jeep.

4

States Court of Appeals for the Sixth Circuit noted that when the petitioner was sentenced in federal court he was in state custody although he had not been convicted or sentenced in state court. United States v. Derrick Eugene Means, No. 97-5316, 1997 WL 584259, at * 1 (6th Cir., Sept. 19, 1997). The federal judgment directed that the petitioner's federal sentence be served concurrently with another federal sentence but did not address the state sentences because they had not been imposed. Later, federal officials chose not to accept the petitioner until after the service of the state sentence. The Sixth Circuit upheld the district court's findings that (a) the district court lacked the power to order the United States to run a federal sentence concurrently with a state sentence that had not been imposed; (b) the United States was not a party to the state court plea agreement; and (c) the state court could not order federal authorities to accept the petitioner for service of sentence. The Sixth Circuit ruled that federal prison officials are under no obligation to take state prisoners into custody until they are released from state sentence. Id. at * 2.

**Appeal of Denial of Post-Conviction Relief**

In this appeal, the state concedes that the petitioner's pleas were not knowingly made because he had bargained to receive state credit for his time spent in federal prison. Now, of course, he is serving consecutive state and federal sentences.

During oral argument, this court encouraged the parties to attempt a settlement. Correspondence from the state attorney general's office indicates that the district attorney general's office in Shelby County has declined to engage in further plea negotiations with the petitioner. Both the state and counsel for the petitioner had asked that the matter be resolved by order of this court.

5

## Knowingness of the Guilty Pleas

Findings of the post-conviction court are binding on appeal unless the evidence preponderates otherwise. Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). This court may not reweigh or reevaluate the evidence or substitute its inferences for those drawn by the post-conviction court. Moreover, the questions concerning the credibility of witnesses and weight and value to be given their testimony are for resolution by the post-conviction court. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990).

As conceded by the state, however, this court must conclude that the evidence in the record preponderates against the findings of the trial court. The petitioner's guilty pleas were not knowingly entered. Clearly, the petitioner pled guilty under the belief that he would receive credit toward his state sentence while in federal prison. The trial judge ordered that the petitioner be sent to federal prison. All parties relied on that directive. Once the sentence had been completed in the federal system, the petitioner was to be transferred to state prison to serve the remainder of his time. Because the petitioner was sent to state prison first, he is, contrary to the intent of the plea agreement, serving consecutive sentences. His total time of incarceration will far exceed that anticipated in the agreement. Had the petitioner known the terms of the plea bargain would not be fulfilled, he would not have pled guilty to the terms offered. The petitioner has demonstrated in this appeal that the evidence preponderates against the trial court's findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978).

## Ineffective Assistance of Counsel

The representations made by the petitioner's attorney were directly related to his acceptance of the plea bargain and his pleading guilty. In order for the

6

petitioner to be granted relief on the grounds of ineffective assistance of counsel, he must first establish that the advice given or the services rendered were below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, no relief is warranted. As to guilty pleas, the petitioner must establish a reasonable probability that, but for the errors of his counsel, he would not have entered the plea and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

On appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence in the record preponderates against them. Rhoden v. State, 816 S.W.2d 56, 60 (Tenn. Crim. App. 1991); Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny, 576 S.W.2d at 14.

The petitioner claims that Attorney Skahan had a duty to investigate whether the terms of the plea could be implemented before rendering advice on whether to accept the plea bargain. Attorney Skahan testified that she represented the petitioner in federal court on the motion for new trial, the sentencing hearing, and the appeal. She was employed by the petitioner's family on a limited basis, essentially to represent the petitioner for the purpose of guilty pleas in state court. During the time she represented the petitioner, she negotiated downward the offer by the state from twenty years to twelve years. She believed that under the circumstances, particularly the petitioner's eleven prior felony convictions, that the agreement was favorable.

7

Ms. Skahan had discussed the option of a trial with the petitioner. The victim of the robbery had described the suspect as a large black man, six feet and nine inches tall, with a heavy build and gold dental work; the victim had positively identified the petitioner as the perpetrator. Ms. Skahan learned that the petitioner, who is apparently quite distinctive looking, had been identified by a person in addition to the victim. She did not believe it was good strategy to offer testimony from the petitioner's alibi witnesses because she did not consider the witnesses to be particularly credible. Ms. Skahan testified that the better tactic at a trial would have been to argue for lesser offenses, such as robbery and aggravated assault. She acknowledged recommending that the petitioner accept the twelve-year offer.

Ms. Skahan said the agreement that the petitioner was to serve the time in federal prison was noted on "the paperwork every place we could." She recalled that she learned from the petitioner that the agreement had not been honored and conceded that federal authorities told her that state courts had no authority to order concurrent sentences.

The effectiveness of the bargain depended upon the petitioner being sent to federal prison first. All parties assumed that the petitioner would be accepted by the federal authorities. The trial court so ordered based upon the common perception that there was authority to do so. In our view, Ms. Skahan had a duty to investigate and determine whether the terms of the agreement could be met before recommending the plea.

The record establishes that the petitioner has met the burden for demonstrating his counsel was ineffective. He has shown both deficiency in performance and prejudice in result. The standard of proving prejudice requires

only a showing of "a reasonable probability ... sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; Harris v. State, 875 S.W.2d 662, 665 (Tenn. 1994).

The lack of action by trial counsel was obviously not the result of bad faith. Yet the United States Supreme Court has previously observed just because the "breach of [an] agreement was inadvertent does not lessen its impact." Santobello v. United States, 404 U.S. 257, 262 (1971).

## Relief Now Sought in State Court

The petitioner argues specific performance of the plea agreement is required when the defendant has suffered prejudice. While the petitioner concedes that exact performance is not available because of the state court's lack of authority over federal authorities, he asks this court to tailor a remedy to embrace the original intent of the parties.

The petitioner suggests several alternatives. Initially, he seeks immediate release from custody on the state charges based upon time served. He contends he could then be transferred to federal prison to begin serving federal time. In the alternative, he asks this court to vacate the judgment, remand the cause, and instruct the prosecutors to effectuate the intent of the plea agreement and to bargain in good faith. Finally, he argues that his state sentence should be reduced by forty-six months, the length of his federal prison sentence, in order to reap the benefits of his bargain. He argues against merely setting aside his guilty pleas and restoring him to his pre-plea status because one of his alibi witnesses (the petitioner's brother) has died since the submission hearing.

9

The state observes that specific performance is not available and suggests that the petitioner either face a trial or negotiate another plea agreement. The state argues against enforcement of the bargain. The state points out that it cannot assume that the federal government will actually keep the petitioner for as long as forty-six months and that if the petitioner received early parole, the state would be without jurisdiction to incarcerate him for the balance of his state term.

**The Problem of Concurrent Sentences**

The Tennessee Rules of Criminal Procedure do provide for concurrent service of state and federal sentences if explicitly ordered by the trial court. Tenn. R. Crim. P. 32(c)(2); State v. Graham, 544 S.W.2d 921, 922 (Tenn. Crim. App. 1976). While authorized by the rule, the implementation of concurrent state and federal sentences has proven to be difficult. See State v. Hun, 478 S.E.2d 579, 582 (W.Va. 1996). The practical problems with the rule are as a result of dual sovereignty. Neither sovereign controls the other's proceedings. See United States v. Howard Thomas Pargen, No. 95-6253, 1996 WL 636193, at * 7 (6th Cir., Oct. 30, 1996) (Court found that state court lacked authority to order not-yet imposed federal sentences be served concurrently with state. The defendant's recourse is with the state who promised something beyond scope of authority.); Bloomgren v. Belaski, 948 F.2d 688, 691 (10th Cir. 1991)(Although state court ordered state sentences to run concurrently with federal sentence which became final after the imposition of the state sentence, federal authorities refused to take custody of the defendant until he was finished serving his state sentence. The court ruled that the federal government had no duty to take Bloomgren into custody. "The determination by federal authorities that Bloomgren's federal sentence would run consecutively to his state sentence is a federal matter which cannot be overridden by a state court provision for concurrent sentencing on a subsequently-obtained

10

state conviction."); see also Clark v. State, 468 S.E.2d 653, 655 (S.C. 1996); Del

Guzzi v. United States, 980 F.2d 1269, 1270 (9th Cir. 1992) (State judge's authority

was limited to sending defendant to state prison to serve state time.)

The concurring opinion in Del Guzzi summarizes the problem from a

federal court's perspective:

> State sentencing judges and defense attorneys in state
> proceedings should be put on notice. Federal prison
> officials are under no obligation to, and may well refuse
> to, follow a recommendation of state sentencing judges
> that a prisoner be transported to a federal facility.
> Moreover, concurrent sentences imposed by state judges
> are nothing more than recommendations to federal
> officials. Those officials remain free to turn those
> concurrent sentences into consecutive sentences by
> refusing to accept the state prisoner until completion of
> the state sentence and refusing to credit the time the
> prisoner spent in state custody.

Del Guzzi, 980 F.2d at 1272-73 (Norris, J., concurring); see also Hun, 478 S.E.2d at

582.

**Relief**

When a plea agreement is accepted and breached, one of two results

ordinarily follows. Either specific performance of the agreement is directed or the

parties are restored to the status existing immediately before the plea was entered.

Harris, 875 S.W.2d at 666; Metheny v. State, 589 S.W.2d 943, 945 (Tenn. Crim.

App. 1979).

When a guilty plea "rests in any significant degree on a promise or

agreement of the prosecutor, so that it can be said to be part of the inducement or

consideration, such promise must be fulfilled." Santobello, 404 U.S. at 262; Avery v.

United States, No. 93-6572, 1995 WL 6223, at *3 (6th Cir., Jan. 5, 1995). Specific

performance is a permissible remedy. Santobello, 404 U.S. at 263, 92 S.Ct. at 499;

11

State v. Goosby, 917 S.W.2d 700, 707 (Tenn. Crim. App. 1995).

In arguing for relief, the petitioner relies on Harris and Goosby. In Harris, the Tennessee Supreme Court fashioned a remedy after affirming a lower court finding that Harris was denied the effective assistance of counsel because his attorney failed to timely communicate a plea offer. When an accused is denied the effective assistance of counsel, the conviction cannot stand. Harris, 875 S.W.2d at 665. Violations of Sixth Amendment right to counsel can be addressed by tailoring appropriate relief. Harris, 875 S.W.2d at 666. The Tennessee Supreme Court remanded the case to the trial court instructing the state to reinstate its guilty plea offer and negotiate in good faith. The trial court was advised that it could accept or reject the original or any other plea agreement which could be negotiated. Otherwise, the defendant would face trial. Harris, 875 S.W.2d at 667.

In Goosby, a panel of this court also remanded a case to the trial court and directed the state to reinstate its original plea offer after defense counsel was found to be ineffective for failing to challenge the trial court's rejection of the defendant's guilty plea. The state was ordered to negotiate in good faith. The trial court could accept or reject any plea agreement reached by the parties. If no plea agreement was reached, the defendant would stand trial. Goosby, 917 S.W.2d at 708.

As in Harris and Goosby, this court suggests several alternative forms of relief. Fashioning relief for the petitioner will take the combined good faith efforts of all involved. The parties are first encouraged to make every effort to fulfill the intent of the plea bargain. Specific performance may, however, be impossible to effectuate. Both defense counsel and the district attorney's office, while taking

12

steps to preserve the integrity of the state sentence, should contact the federal authorities and determine whether the federal authorities would be willing to accept the petitioner for his federal sentence.

If specific performance is an impossibility, the parties should enter into new plea negotiations taking into account the intentions of the failed plea agreement. The agreement failed through no fault of the petitioner. In our view, plea negotiations and sentencing should take into account the time the petitioner has served in prison and in the county jail. If these avenues do not provide a satisfactory resolution, the petitioner may be allowed to withdraw his guilty pleas altogether and face trial.

PER CURIAM

Gary R. Wade, Judge

Jerry L. Smith, Judge